IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | DATE FILED: |
| THOMAS STAFFORD | : | VIOLATIONS:<br>26 U.S.C. § 7202 (failing to collect and pay |
| | : | over tax – 24 counts)<br>18 U.S.C. § 157(2) (bankruptcy fraud – 2 |
| | : | counts)<br>Notice of forfeiture |
| | : | |

## INDICTMENT

### COUNTS ONE THROUGH TWENTY-FOUR
(Failure to account for and pay over tax)

THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

1. Defendant THOMAS STAFFORD was the Chief Executive Officer and President of Information Systems Staffing, Inc. ("ISS"), which was incorporated in Delaware and registered in Pennsylvania as a foreign business corporation. Defendant STAFFORD also owned ISS through his nominee (Person No. 1).

2. ISS was an information technology staffing company based in Bala Cynwyd and Philadelphia, which commenced operations in or around late 2018. At this time, ISS began to provide information technology staffing services to the primary customer of Integrated Support Services, Inc. ("Integrated"), a similar business controlled by defendant THOMAS STAFFORD, and ISS assumed many of the same employees of Integrated, which subsequently ceased operations.

3.    On or about December 29, 2017, defendant THOMAS STAFFORD opened a checking account in the name of ISS at Wells Fargo Bank, N.A. ("Wells Fargo"), account no. xxxx8567 (the "Wells Fargo 8567 Account"). Defendant STAFFORD was a signatory on the Wells Fargo 8567 Account, which was used for, among other things, paying the salaries of ISS's employees, paying ISS's business expenses, receiving payments from ISS's customers, and paying defendant STAFFORD's personal expenses (separate and apart from his salary), including: (i) approximately $692,000 in payments for mortgage, rent, or other expenses associated with real estate controlled by him and his family members; (ii) approximately $95,000 in net payments to Stafford Legacy LLC, which owned real estate and was principally set up for the benefit of his family members; and (iii) approximately $105,000 in payments to a law firm that provided legal services to a family member in a litigation matter unrelated to ISS's business.

4.    The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

5.    Pursuant to the Internal Revenue Code and associated statutes and regulations, employers were required to withhold amounts from their employees' gross pay including Federal Insurance Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and federal income taxes. Employers were required to remit these taxes (referred to in this indictment collectively as "trust fund taxes" because employers hold the withheld amounts in trust until paid over to the United States) to the IRS on a quarterly basis, no later than the last day of month following the end of the quarter.

6.    In addition to the trust fund taxes that must be withheld from pay, employers were separately required to make contributions under FICA for Social Security and

2

Medicare in amounts matching the amounts withheld from their employees' pay for those purposes. Such employer contributions were likewise required to be remitted to the IRS no later than the last day of the month following the end of the quarter. Collectively, these five components required to be remitted quarterly were commonly referred to as "employment taxes," made up of the trust fund taxes withheld (individual income, Social Security, and Medicare taxes) and the matching amounts contributed by the employer.

7.     Employers were required to file, no later than one month after the conclusion of the calendar quarter, an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"), setting forth the total amount of income taxes withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits.

8.     A person was responsible for collecting, accounting for, and paying over the trust fund taxes if he or she had the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual exercised such control in fact.

9.     Defendant THOMAS STAFFORD exercised control over ISS's financial affairs by, among other acts, controlling ISS's bank accounts (including the Wells Fargo 8567 Account), determining which expenses of ISS to pay, determining whether ISS should hire third-party entities to help ISS pay its employment taxes and file ISS's Forms 941, and obtaining funds on behalf of ISS so that ISS could pay its expenses (including employee salaries); thus, defendant STAFFORD was a responsible person for collecting trust fund taxes, accounting for the employment taxes by filing Forms 941 with the IRS, and paying over to the IRS the employment taxes for ISS's employees.

10.     From January 1, 2019 to December 31, 2024, defendant THOMAS STAFFORD, and agents working at his direction, paid ISS employees on a regular basis and

3

withheld from the employees' paychecks the trust fund taxes associated with the employees' wages.

11.    For the first quarter of 2019 through the fourth quarter of 2024, ISS owed the IRS a total of approximately $2,008,046.63 in trust fund taxes on behalf of the employees of ISS.

12.    For the first quarter of 2019 through the fourth quarter of 2024, defendant THOMAS STAFFORD caused ISS to fail to file Forms 941 with the IRS and caused ISS to fail to pay over to the IRS any of the trust fund taxes due and owing to the IRS on behalf of the employees of ISS.

13.    On or about the dates listed in the table below, for each of the calendar quarters listed below, in the Eastern District of Pennsylvania and elsewhere, defendant

**THOMAS STAFFORD**

willfully failed to truthfully account for and pay over the trust fund taxes due and owing to the IRS on behalf of the employees of ISS, each quarter constituting a separate count:

| Count | Date of Offense (i.e., Due Date for Trust Fund Taxes) | Calendar Quarter Ending |
|---|---|---|
| 1 | April 30, 2019 | March 30, 2019 |
| 2 | July 31, 2019 | June 30, 2019 |
| 3 | October 31, 2019 | September 30, 2019 |
| 4 | January 31, 2020 | December 31, 2019 |
| 5 | April 30, 2020 | March 30, 2020 |
| 6 | July 31, 2020 | June 30, 2020 |
| 7 | October 31, 2020 | September 30, 2020 |
| 8 | January 31, 2021 | December 31, 2020 |
| 9 | April 30, 2021 | March 30, 2021 |
| 10 | July 31, 2021 | June 30, 2021 |
| 11 | October 31, 2021 | September 30, 2021 |
| 12 | January 31, 2022 | December 31, 2021 |
| 13 | April 30, 2022 | March 30, 2022 |

4

| Count | Date of Offense (i.e., Due Date for Trust Fund Taxes) | Calendar Quarter Ending |
|---|---|---|
| 14 | July 31, 2022 | June 30, 2022 |
| 15 | October 31, 2022 | September 30, 2022 |
| 16 | January 31, 2023 | December 31, 2022 |
| 17 | April 30, 2023 | March 30, 2023 |
| 18 | July 31, 2023 | June 30, 2023 |
| 19 | October 31, 2023 | September 30, 2023 |
| 20 | January 31, 2024 | December 31, 2023 |
| 21 | April 30, 2024 | March 30, 2024 |
| 22 | July 31, 2024 | June 30, 2024 |
| 23 | October 31, 2024 | September 30, 2024 |
| 24 | January 31, 2025 | December 31, 2024 |

All in violation of Title 26, United States Code, Section 7202.

## COUNTS TWENTY-FIVE AND TWENTY-SIX
(Bankruptcy Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 12 of Counts One through Twenty-Four are incorporated here.

### BACKGROUND

#### The Purpose and Mechanics of Federal Bankruptcy Proceedings

2.    Bankruptcy is a process by which a debtor may obtain relief from the obligation to repay his creditors—i.e., those to whom he owes money.  The bankruptcy process is designed to achieve an orderly transfer of a debtor's assets to creditors from available assets and relies on a debtor's truthful and accurate disclosure of all assets and debts.  Bankruptcy is intended to provide a "fresh start" to honest debtors by allowing them to obtain a discharge or release of certain debts incurred prior to filing bankruptcy.  The process is conducted in federal court and is governed by Title 11, United States Code, Section 101, *et seq.* (the "Bankruptcy Code").

3.    The Bankruptcy Code contains different chapters under which individuals or companies may file, each of which provides a different path toward the discharge of debt.  An individual can initiate a bankruptcy case under Chapter 7, 11, 12, or 13 of the Bankruptcy Code by filing a bankruptcy petition.  The petition, which contains summary information about a debtor's financial situation, starts the bankruptcy process, but a debtor must complete and file other required documents in order to obtain a bankruptcy discharge.

4.     Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code provides that almost all litigation and collection actions against that debtor are automatically stayed for the duration of the bankruptcy case. This provision is referred to as the "automatic stay."

5.     A debtor who files a bankruptcy petition must also complete and file various schedules of assets and liabilities. These include Official Form 106 Schedule A/B (Real and Personal Property), Schedule C (Property Claimed as Exempt), Schedule D (Creditors Holding Secured Claims), Schedule E/F (Creditors Holding Unsecured Priority and Non-Priority Claims), Schedule G (Executory Contracts and Unexpired Leases), Schedule H (Co-Debtors), Schedule I (Income), and Schedule J (Expenses) (collectively, the "Schedules"). The Schedules require detailed information about all of the debtor's assets, debts, income, and expenses, and are intended to be a snapshot of the debtor's complete financial situation as of the date of the bankruptcy case filing.

6.     A debtor in bankruptcy must also complete an Official Form 107 (Statement of Financial Affairs). The Statement of Financial Affairs requires a debtor to disclose financial data, including, among other things, all income from any source received within the two years preceding the commencement of the bankruptcy case, payments or transfers to any creditor made in the 90 days before the bankruptcy filing, and all other property transferred (other than in the ordinary course of business) either absolutely or as security within the one year immediately before the bankruptcy filing.

7.     Depending on the chapter under which a debtor files, the debtor must also complete various forms, including Official Form 122C-1 (Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period) and Official Form 122C-2 (Chapter 13

7

Calculation of Your Disposable Monthly Income). These forms, which require a debtor to calculate monthly income as an average of income over the six months immediately before the bankruptcy filing, determine whether a debtor is required to propose a plan to repay some or all of his debts. If a debtor's income is low or irregular enough, the debtor can turn all non-exempt assets over to his bankruptcy trustee and obtain a discharge. If, on the other hand, a debtor has sufficient regular, ongoing income each month after paying expenses, that debtor will be required to propose a plan to pay creditors at least a portion of what the creditors are owed. Typically, in a Chapter 13 bankruptcy, the debtor proposes a plan to pay creditors an amount equal to his or her average monthly net income (over the six months immediately before the bankruptcy filing) for a period of 60 months and, at the end of the plan period, any remaining debts are discharged. Although debtors are required to disclose all income from all sources (including non-filing spouses), certain income, like Social Security, is not required to be included when calculating a debtor's required plan payments. A debtor's honest reporting of income is thus an integral and necessary requirement of the bankruptcy process.

8.	The debtor must sign the petition and Official Forms 106I, 106J, 107, 122C-1, and 122C-2 under the penalty of perjury, and certify that the information contained in them is true, accurate, and correct to the best of his knowledge, information, and belief.

### Defendant THOMAS STAFFORD's 2023 Bankruptcy Filing

9.	On or about January 9, 2023, defendant THOMAS STAFFORD filed, through his counsel, a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, initiating Bankruptcy Case No. 23-10050. Defendant STAFFORD electronically signed the petition and declared, under penalty of perjury, that the information provided in the petition was true and correct.

10.     On or about February 17, 2023, defendant THOMAS STAFFORD, through his counsel, filed Official Forms 122C-1 and 122C-2 (Electronic Case Filing No. 13) and Chapter 13 Plan (Electronic Case Filing No. 14) in Bankruptcy Case No. 23-10050.  In these filings, defendant STAFFORD proposed a Chapter 13 plan in which he would pay creditors $750 per month for a period of five years, for a total amount of approximately $45,000.

11.     On or about March 8, 2023, defendant THOMAS STAFFORD, through his counsel, filed in Bankruptcy Case No. 23-10050 false and fraudulent amended bankruptcy documents, including amended Official Forms 106I, 106J, and 107 (Electronic Case Filing No. 19), under penalty of perjury. Among other things:

a.     In response to amended Official Form 106I, Part 2, Question 6: "Calculate monthly take-home pay," meaning the debtor's "gross income" minus "all payroll deductions," defendant STAFFORD falsely stated that his total monthly take-home pay was $8,679.88.

b.     In response to amended Official Form 107, Part 9, Question 23, which asks a debtor "Do you hold or control any property that someone else owns?", defendant STAFFORD falsely checked the box "No."

### Defendant THOMAS STAFFORD's True Monthly Income and Assets

### Defendant's Income

12.     From on or about January 1, 2019 to December 31, 2024, defendant THOMAS STAFFORD received from ISS an annual gross salary of approximately $300,000 and an annual net salary of approximately $194,000 and periodically received other payments from ISS in addition to his salary, such as payments used to pay the mortgage on real property located on Lafayette Road in Gladwyne, Pennsylvania (the "Lafayette Property").

9

13. From on or about June 9, 2022 to on or about January 8, 2023—i.e., the approximate six month period before defendant THOMAS STAFFORD filed the Bankruptcy Case No. 23-10050—defendant STAFFORD: (a) received from ISS payments totaling approximately $143,936.19, for a monthly average income from ISS of approximately $23,989.37; (b) was paid approximately $2,981.70 every month from Social Security; and (c) did not pay any money, and caused ISS not to pay any money, to the IRS, the Commonwealth of Pennsylvania, or the Social Security Administration on account of any personal liability for taxes or other payroll deductions.

### Defendant's True Assets

14. On or about July 25, 2007, defendant THOMAS STAFFORD executed a mortgage in the original principal amount of $613,000.00, which was secured by a lien on residential real property located on Woodbine Avenue in Philadelphia, Pennsylvania (the "Woodbine Property"). From at least on or about June 25, 2007 to the present, defendant STAFFORD's primary residence was the Woodbine Property.

15. In or around 2013, Jamira Real Estate Holdings LLC, a company controlled by defendant THOMAS STAFFORD, purchased the Lafayette Property, without obtaining a mortgage on the property.

16. On or about March 2, 2016, defendant THOMAS STAFFORD caused Jamira Real Estate Holdings, LLC to sell the Lafayette Property to Person No. 2 for $10.

17. Between in or about 2017 and in or about 2018, Person No. 2, at the direction of defendant THOMAS STAFFORD, applied for and obtained mortgages on the Lafayette Property. The first mortgage was for approximately $424,000, and the second mortgage was for approximately $660,000. The second mortgage of $660,000 paid off the

10

previous mortgage in the amount of $424,000 and the excess funds were paid to Person No. 2, who, at the direction of defendant STAFFORD, transferred the majority of the excess funds to a bank account in the name of Jamira Realty Inc., an entity owned by Jamira Real Estate Holdings, LLC.

18.    From on or about March 2, 2016 to the present, Person No. 2 never lived in the Lafayette Property and, at various times, members of defendant THOMAS STAFFORD's family lived in the Lafayette Property, without paying any rent or other compensation to Person No. 2.

19.    From at least in or about 2019 to at least on or about December 31, 2024, defendant THOMAS STAFFORD paid, or caused the payment of, the utilities and monthly mortgage payments of approximately $5700 per month for the Lafayette Property from his personal bank account at Citizens Bank, using funds from ISS's Wells Fargo 8657 Account that were separate and apart from his salary from ISS.

20.    In addition to serving as the Chief Executive Officer and President of ISS, defendant THOMAS STAFFORD controlled the following business entities, which owned various properties:

| Business Entity | Property Holding(s) |
| --- | --- |
| McCallum Street Partners LLC | 6630 McCallum St., Philadelphia, PA |
| 17th St. Development Company LP | 1514 N. 17th St., Philadelphia, PA |
| | 1518 N. 17th St., Philadelphia, PA |
| | 1521 N. 17th St., Philadelphia, PA |
| | 1523 N. 17th St., Philadelphia, PA |
| | 1524 N. 17th St., Philadelphia, PA |
| | 1526 N. 17th St., Philadelphia, PA |
| | 1531 N. 17th St., Philadelphia, PA |
| | 1532 N. 17th St., Philadelphia, PA |
| Stafford Legacy LLC | 2215 W. Tioga St., Philadelphia, PA |
| | 2217 W. Tioga St., Philadelphia, PA |

| Pocono Partners, LLC | Parcel #26-56-A32, Forest, St., Leighton, PA<br>Parcel #26-56-A33, Forest St., Leighton, PA<br>Parcel #39-57-B25.01, Forest St., Leighton, PA |
|---|---|

## THE SCHEME TO DEFRAUD

21. From in or about January 2023 through in or about March 2023, in the Eastern District of Pennsylvania and elsewhere, defendant

## THOMAS STAFFORD,

having devised and intending to devise a scheme and artifice to defraud the Bankruptcy Court and defendant STAFFORD's creditors, and for the purpose of executing and concealing said scheme and artifice, and attempting to do so, filed false and fraudulent documents in a proceeding under Title 11, United States Code, that is, Bankruptcy Case No. 23-10050 in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

## MANNER AND MEANS

It was part of the scheme that:

22. Defendant THOMAS STAFFORD omitted from his bankruptcy filings and made false statements regarding: (i) the true amount of income that he was receiving from ISS; and (ii) his control over various properties owned by others, including ISS, the Lafayette Property, and the business entities listed above in Paragraph 20 of these Counts (Twenty-Five and Twenty-Six).

23. By concealing this income and these properties and making these false statements, defendant THOMAS STAFFORD hid the fact that he had the ability to propose a Chapter 13 plan that would have paid his creditors more than $750 per month for five years. Instead, defendant STAFFORD sought to discharge his debts while concealing his true income and assets.

24.     On or about the below listed dates, in the Eastern District of Pennsylvania and elsewhere, defendant

**THOMAS STAFFORD,**

for the purpose of executing and concealing the scheme described above and attempting to do so, filed and caused to be filed the following false and fraudulent documents in a proceeding under Title 11, United States Code, that is, Bankruptcy Case No. 23-10050 in the United States Bankruptcy Court for the Eastern District of Pennsylvania, each form constituting a separate count:

| Count | Date | False and Fraudulent Document | False Statement |
|---|---|---|---|
| 25 | March 8, 2023 | Electronic Case Filing No. 19, Amended Official Form 106 (Schedule I: Your Income) | In response to Part 2, Question 6, asking filer to "Calculate monthly take-home pay," meaning the debtor's "gross income" minus "all payroll deductions," defendant STAFFORD falsely stated that his total monthly take-home pay was $8,679.88, when, in fact, defendant STAFFORD's actual monthly average take-home pay from ISS was approximately $23,989.37. |
| 26 | March 8, 2023 | Electronic Case Filing No. 19, Amended Official Form 107 (Statement of Financial Affairs) | In response to Part 9, Question 23, asking: "Do you hold or control any property that someone else owns?", defendant STAFFORD falsely checked the box for "No," despite controlling ISS, the Lafayette Property, Jamira Real Estate Holdings, LLC, 17th St. Development Company, LP, Stafford Legacy, LLC, Pocono Partners, LLC, and McCallum Street Partners, LLC. |

All in violation of Title 18, United States Code, Sections 157(2) and 2.

13

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Section 157(2) set forth in this indictment, defendant

**THOMAS STAFFORD**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

14

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Sections 981(a)(1)(C).

A TRUE BILL:

FOREPERSON

*Christine E Ayers for*

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

THOMAS STAFFORD

INDICTMENT

Counts
**26 U.S.C. § 7202 (failing to collect and pay over tax – 24 counts)**
**18 U.S.C. § 157(2) (bankruptcy fraud – 2 counts)**
**Notice of forfeiture**

A true bill.



Filed _____ _day,